IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | | |
|---|---|---|
| BRENT E. REEVES, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Case No. 07-890-KI |
| | ) | |
| vs. | ) | OPINION AND ORDER |
| | ) | |
| COMMISSIONER of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| ———————————————— | ) | |

David B. Lowry
9900 S. W. Greenburg Road
Columbia Business Center, Suite 235
Portland, Oregon  97223

       Attorney for Plaintiff

Karin J. Immergut
United States Attorney
District of Oregon
Britannia I. Hobbs
Assistant United States Attorney
1000 S. W. Third Avenue, Suite 600
Portland, Oregon  97204-2902

David J. Burdett
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, Washington  98104-7075

   Attorneys for Defendant


KING, Judge:

  Plaintiff Brent E. Reeves brings this action pursuant to section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner denying plaintiff's application for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI").  I reverse the decision of the Commissioner and remand for a finding of disability.

## DISABILITY ANALYSIS

  The Social Security Act (the "Act") provides for payment of disability insurance benefits to people who have contributed to the Social Security program and who suffer from a physical or mental disability.  42 U.S.C. § 423(a)(1).  In addition, under the Act, supplemental security income benefits may be available to individuals who are age 65 or over, blind, or disabled, but who do not have insured status under the Act.  42 U.S.C. § 1382(a).

  The claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months.  42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).  An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous

Page 2 - OPINION AND ORDER

work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability.  The claimant has the burden of proof on the first four steps.  <u>Bustamante v. Massanari</u>, 262 F.3d 949, 953 (9th Cir. 2001); 20 C.F.R. §§ 404.1520 and 416.920.  First, the Commissioner determines whether the claimant is engaged in "substantial gainful activity."  If the claimant is engaged in such activity, disability benefits are denied.  Otherwise, the Commissioner proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments.  A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(c) and 416.920(c).  If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the Commissioner proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(d) and 416.920(d).  If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.  If the impairment is not one that is presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past.  If the claimant is able to perform work which he or she performed in the past, a finding of

"not disabled" is made and disability benefits are denied.  20 C.F.R. §§ 404.1520(e) and 416.920(e).

If the claimant is unable to perform work performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his or her age, education, and work experience.  The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. Bustamante, 262 F.3d at 954.  The claimant is entitled to disability benefits only if he is not able to perform other work.  20 C.F.R. §§ 404.1520(f) and 416.920(f).

## STANDARD OF REVIEW

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards.  Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005).  Substantial evidence is more than a "mere scintilla" of the evidence but less than a preponderance.  Id.  "[T]he commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision."  Batson v. Barnhart, 359 F.3d 1190, 1193 (9th Cir. 2003) (internal citations omitted).

## THE ALJ'S DECISION

The ALJ explained that he was hearing the case after the first decision was remanded by the District Court on October 29, 2004 for further administrative proceedings.

The ALJ found that Reeves had severe impairments of bipolar disorder and hypertension. However, the ALJ also found that these impairments, either singly or in combination, were not

severe enough to meet or medically equal the requirements of any of the impairments listed in Appendix 1, Subpart P of the Social Security Regulations.

The ALJ concluded that from January 28, 2001 through December 31, 2002, Reeves could perform medium work, was limited to simple, repetitive, routine 1-2-3-4 step jobs, to lower stress jobs, to occasional public interaction, and to no hazards.  He also concluded that Reeves had deficiencies in concentration, persistence, and pace that would interfere with completion of tasks for more than one third of the work day.  Based on this last limitation, the ALJ concluded that Reeves was disabled for the closed period from January 28, 2001 through December 31, 2002.

On January 1, 2003, once Reeves was able to continuously take Depakote, the ALJ found that medical improvement occurred that was related to Reeves' ability to work.  The ALJ dropped the above deficiency concerning concentration, persistence, and pace.  Based on vocational expert testimony, the ALJ found that Reeves' disability ended on January 1, 2003 because he was then able to work as a janitorial worker or a dishwasher.

## FACTS

Reeves alleges he became disabled on January 28, 2001 due to bipolar disorder and hypertension.  He was 40 years old at the time of his alleged onset date and 46 years old when the ALJ issued his opinion.  Reeves completed the ninth grade with the help of special education classes.  He has worked as a landscape laborer, a gas station attendant, a forklift operator, a warehouse worker, and a street repair worker.  Reeves lives with his ex-wife and teenage son, who both think Reeves could not live alone.  Reeves states that he does about one third of the chores around the house.

Reeves attempted suicide on his alleged onset date, was hospitalized for just over a week,

and was diagnosed with bipolar disorder.  Reeves had two previous psychiatric hospitalizations.

Since 2001, Reeves has had between two and ten panic attacks a day, each lasting from

three minutes to an hour.  He also has anger outbursts from two to six times a day, each lasting

about five minutes, during which he raises his voice over the voices of the people he is dealing

with.  Reeves has a couple of crying spells a week, each lasting up to ten minutes.  He claims he

has between two and six manic episodes a day, lasting as long as two hours.  During manic

episodes, Reeves has no energy, is very tired, and has to really push himself to do anything, such

as fix a meal.  Reeves claims that he must nap in bed every day.  Depending on whether he is

having mood swings, the naps last from 30 minutes to 4 hours.  Reeves has difficulty being

around people.  On a bad day, he thinks he can only accomplish about 30 to 40 percent of what

he used to be able to do.

Reeves also suffers from dizzy spells two to four times a day, caused in his opinion by

either his high blood pressure, as a side effect of medication, or by having a mood swing.

Dr. Lyon administered an MMPI-2 to Reeves on November 28, 2006.  Dr. Lyon stated, in

part:

> Mr. Reeves' responses to the MMPI-2 yielded marginal validity results.
> He tended to claim an unrealistic level of morals and virtue.  The resulting clinical
> and contents scales would likely underestimate his psychological difficulties as a
> result.  His highest elevations were on the Hs and Pt Scales.  Based on the results
> he would show an intense and mixed symptom pattern.  He would be chronically
> tense and anxious and show fear of suspected health problems.  His over concern
> with health would lower his psychological efficiency.  Individuals with response
> patterns similar to those of Mr. Reeves tend to be rigid and perfectionist,
> becoming upset at slight provocation.  He shows low self-esteem and feelings of
> inadequacy.  He would panic easily and manifest phobias and
> obsessive/compulsive patterns.  Mr. Reeves endorsed a number of bizarre ideas,

which would indicate that he has experienced delusions and/or hallucinations.  In
relationships he would tend to be rigid, perfectionistic and passive dependent, and
have difficulty meeting people.  He would be seen as shy and emotionally distant,
as well as uneasy, rigid, and over-controlled.

Tr. 479.  At that time, Reeves' full scale IQ was determined to be 78.

## DISCUSSION

I.    <u>Reeves' Subjective Complaints</u>

Reeves contends that the ALJ erred by rejecting his testimony concerning the period after

January 1, 2003 without articulating any reasons for the rejection.

When deciding whether to accept the subjective symptom testimony of a claimant, the

ALJ must perform a two-stage analysis.  In the first stage, the claimant must (1) produce

objective medical evidence of one or more impairments; and (2) show that the impairment or

combination of impairments could reasonably be expected to produce some degree of symptom.

<u>Smolen v. Chater</u>, 80 F.3d 1273, 1281-82 (9th Cir. 1996).  The claimant is not required to

produce objective medical evidence of the symptom itself, the severity of the symptom, or the

causal relationship between the medically determinable impairment and the symptom.  The

claimant is also not required to show that the impairment could reasonably be expected to cause

the severity of the symptom, but only to show that it could reasonably have caused some degree

of the symptom.  <u>Id.</u> at 1282.  In the second stage of the analysis, the ALJ must assess the

credibility of the claimant's testimony regarding the severity of the symptoms.  If there is no

affirmative evidence of malingering, the ALJ may reject the claimant's testimony only if the ALJ

makes specific findings stating clear and convincing reasons for the rejection, including which

testimony is not credible and what facts in the record lead to that conclusion.  <u>Id.</u> at 1284.

Page 7 - OPINION AND ORDER

The Commissioner argues that the ALJ did not err because he noted evidence suggesting malingering.

The ALJ concluded that Reeves' statements concerning the limiting effects of his symptoms from January 28, 2001 through December 31, 2002 were generally credible but the statements concerning symptoms after January 1, 2003 were not entirely credible.  Although the ALJ did not group his reasons for the rejection in one paragraph, he did give reasons throughout the opinion.

The ALJ noted that during the November 2006 neuropsychological examination, Dr. Lyon found that Reeves had poor testing motivation, unreliable responses and marginal MMPI-2 validity results.  In his report, Dr. Lyon stated that Reeves was basically cooperative but his responses showed a low motivation to perform.  This led Dr. Lyon to conclude that the testing underestimated Reeves' current level of intellectual and memory functioning.  Dr. Lyon also concluded that the MMPI-2 results likely *underestimated* Reeves' psychological difficulties.  Thus, only part of the ALJ's reason is supported by the record.  I do not characterize Dr. Lyon's statements as evidence of malingering at a level that, without more, would support the rejection of a claimant's symptom testimony.

The ALJ noted that one of Reeves' treating physicians, Dr. Schuemann, questioned Reeves' compliance regarding his hypertension.  In her chart notes, Dr. Schuemann stated on February 7, 2003 that she suspected that Reeves, who she characterizes as morbidly obese, was not eating as he told her.  She made a similar comment on February 28, 2003 when comparing his weight gain to his statement that he only eats chicken without the skin and fish, and again on March 31, 2003.  I agree with the ALJ that this is evidence which could support a finding of no

credibility.  I note a large difference, however, between an obese person exaggerating the healthiness of his diet and a mentally ill person exaggerating his mental symptoms.

The ALJ stated that Dr. Lyon noted inconsistent reports about various evaluations regarding psychotic symptoms and alleged bipolar symptoms.  Due to Reeves' description of his manic episodes, which were not characteristic, Dr. Lyon wondered if Reeves suffered from hypomanic episodes or purely reactive depressive episodes.  I find that the ALJ's reason is not a valid one to support discrediting Reeves' subjective symptom testimony.  Reeves' description of the episodes does not vary anywhere in the record and he was diagnosed as having bipolar disorder during his last hospitalization.  A difference of opinion on the precise nature of the mental illness cannot support a finding that Reeves is not credible.  Moreover, the ALJ also noted Dr. Lyon's statement that Reeves appeared to be candid aside from his tendency to over-focus on his alleged mental illness.

Thus, the valid reasons given by the ALJ for finding that Reeves was not entirely credible concerning his symptoms after January 1, 2003 are reduced to Reeves' poor motivation when tested by Dr. Lyon and Reeves not being forthright about his diet with Dr. Schuemann.  I conclude that these two reasons are not clear and convincing reasons to reject Reeves' testimony. It is not uncommon for people to lie about their weight or their diet, especially when being scolded by their physician.  That does not convince me, however, that the same person would lie about their fatigue, panic attacks, anger outbursts, and crying spells.  In addition, although Dr. Lyon was concerned about Reeves' lack of motivation, that concern is balanced by Dr. Lyon's statement that Reeves appeared to be candid.  I note that Reeves only completed the ninth grade, with the help of special education classes, and that he repeated a grade.  Reeves may not test well

and his motivation could be affected by his failures in school. I am also concerned by the lack of explanation by the ALJ about why Reeves changed from credible to lacking credibility.

For these reasons, I find that the ALJ did not properly find Reeves to be not entirely credible in his statements about his symptoms after January 1, 2003.

II.    Remedy

The court has the discretion to remand the case for additional evidence and findings or to award benefits. Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996). The court should credit evidence and immediately award benefits if the ALJ failed to provide legally sufficient reasons for rejecting the evidence, there are no issues to be resolved before a determination of disability can be made, and it is clear from the record that the ALJ would be required to find the claimant disabled if the evidence is credited. Id. If this test is satisfied, remand for payment of benefits is warranted regardless of whether the ALJ might have articulated a justification for rejecting the evidence. Harman v. Apfel, 211 F.3d 1172, 1178-79 (9th Cir.), cert. denied, 531 U.S. 1038 (2000).

The "crediting as true" doctrine resulting in an award of benefits is not mandatory in the Ninth Circuit, however. Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003). The court has the flexibility to remand to allow the ALJ to make further determinations, including reconsidering the credibility of the claimant. Id. On the other hand, "in the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy, even though the vocational expert did not address the precise work limitations established by the improperly discredited testimony, remand for an immediate award of benefits is appropriate." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004).

Page 10 - OPINION AND ORDER

This case was remanded by this Court once already and then waited 14 months between hearings on remand to obtain a single neuropsychological examination of Reeves. It is clear from the vocational expert's testimony that if I credit Reeves' subjective symptom testimony, he is disabled under the Act. I see no reason to remand the case for a second time to give the ALJ another attempt to analyze Reeves' credibility. Accordingly, I reverse the decision of the Commissioner and find that Reeves has been disabled as of January 28, 2001 and that the disability did not come to an end as found by the ALJ.

## CONCLUSION

The decision of the Commissioner is reversed. The case is remanded for a finding of disability.

IT IS SO ORDERED.

Dated this _____17th_____ day of September, 2008.

_____/s/ Garr M. King_____
Garr M. King
United States District Judge